UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANA Y. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO.  C15-220-RSL-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Ana Y. Smith appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff is a 33-year-old woman with a high school education.  Administrative Record ("AR") at 103-04, 261.  Her past work experience includes employment as a customer service representative, cook, property manager, retail sales assistant, telemarketer, and telephone sales service assistant. AR at 262.  At the time of the administrative hearing, Plaintiff worked part-

REPORT AND RECOMMENDATION - 1

time as an administrative assistant. AR at 41-42.

On March 23, 2012, Plaintiff filed applications for SSI and DIB, alleging an onset date of January 1, 2010. AR at 103-04, 224-39, 257. Plaintiff asserts that she is disabled due to multiple sclerosis. AR at 261.

The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at 131-34, 138-49. Plaintiff requested a hearing, which took place on April 23, 2013. AR at 33-74. On August 5, 2013, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform her past relevant work, as well as other specific jobs existing in significant numbers in the national economy. AR at 17-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On February 12, 2015, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Smith bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On August 5, 2013, the ALJ found:

1. The claimant meets the insured status requirements of the Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.

3. The claimant's multiple sclerosis, affective disorders, and organic mental disorders are severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with some additional limitations. She can frequently climb ramps and stairs, balance, stooping, kneel, crouch, and crawl. She can occasionally climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme heat, vibration, and hazards such as dangerous machinery or unprotected heights. She is able to perform simple, routine tasks with customary breaks and lunch. She cannot perform fast-paced work, defined as constant activity performed sequentially and in rapid succession.

6. The claimant is capable of performing past relevant work as a phone solicitor, appointment clerk, and travel reservation clerk. In the alternative, there are other jobs that exist in significant numbers in the national economy that the claimant can perform.

      7.      The claimant has not been under a disability, as defined in the Act, from January 1, 2010, through the date of this decision.

AR at 19-28.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in assessing the opinions of treating physician Annette Wundes, M.D., and examining psychiatrist Anthony Bottone, M.D.;

2. Whether the ALJ erred in assessing a lay statement provided by Constance Smith;

3. Whether the ALJ erred in assessing Plaintiff's RFC; and

4. Whether the ALJ erred in discounting Plaintiff's credibility.

Dkt. 13 at 1-2.

## VII.  DISCUSSION

A.  <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility.</u>

The ALJ discounted Plaintiff's credibility for several reasons: (1) the evidence was inconsistent with allegations of disabling physical and mental limitations; (2) Plaintiff's activities are not consistent with her allegation that "her symptoms keep her in bed 20 hours per day and prevent her from maintaining concentration"; (3) Plaintiff worked part-time during the period at issue; (4) Plaintiff collected unemployment benefits during some of the time she claims to be disabled; and (5) Plaintiff made inconsistent statements regarding marijuana use. AR at 23-25.  Plaintiff contends that these reasons are not clear and convincing, as required in the Ninth Circuit.  Dkt. 13 at 14-18.  For the reasons explained below, at least some of the ALJ's reasons are clear and convincing, and the inclusion of any erroneous reasons is harmless error.

REPORT AND RECOMMENDATION - 6

1. *Legal Standards*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (Jul. 2, 1996). Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.      *Unemployment Benefits*

The ALJ noted that Plaintiff collected unemployment benefits during some of the time that she claimed to be unable to work, although receipt of the benefits was conditioned upon her certification that she was able to work. AR at 25. Plaintiff argues that the fact that she sought work, and was "able and willing to work" does not undermine the credibility of her disability application (Dkt. 13 at 17), but does not explain how this could be so. That she ultimately accepted a part-time position does not, on its own, establish that part-time work is "the extent of her capacity[,]" as Plaintiff contends. Dkt. 13 at 17. The ALJ's finding regarding Plaintiff's receipt of unemployment benefits is reasonable, and supports the adverse credibility determination.

3.      *Inconsistent Statements Regarding Marijuana Use*

The ALJ found that Plaintiff's credibility was undermined by her statement to Dr. Bottone that she used no drugs, when other records indicate she was, at that time, using marijuana daily. AR at 25 (citing AR at 403, 420). Inconsistent statements regarding drug use is a clear and convincing reason to discount a claimant's credibility. *Thomas*, 278 F.3d at 959.

Plaintiff argues that the statement to Dr. Bottone is not clearly inconsistent, because it is not clear what Dr. Bottone meant by "drugs," especially because marijuana possession is now legal in Washington and she was using it medicinally. Dkt. 13 at 17. But at the time of Dr. Bottone's examination, marijuana was not legal. And if Plaintiff had believed she was using marijuana as a medication, she denied the use of any medications to Dr. Bottone. AR at 403. Plaintiff's statements to Dr. Bottone are inconsistent with her reports at other times, and this inconsistency is a sufficient reason to discount Plaintiff's credibility. *See Light*, 119 F.3d at 792 ("In weighing a claimant's credibility, the ALJ may consider his reputation for

truthfulness, inconsistencies either in his testimony or between his testimony and his conduct . . .").

4. *Lack of Mental Health Treatment*

The ALJ noted that Plaintiff has not received ongoing mental health treatment, which undermines her allegations of disabling mental limitations. AR at 24. Plaintiff does not directly address this rationale in her opening brief. Lack of treatment for an allegedly disabling condition is a clear and convincing reason to discount a claimant's credibility, and this reasoning supports the ALJ's adverse credibility determination. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

5. *Other Reasons*

Even if, as Plaintiff contends, the ALJ's other credibility reasons are insufficient, the inclusion of these reasons is harmless error because the ALJ provided the clear and convincing reasons described above. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Accordingly, the ALJ's adverse credibility determination should be affirmed.

B. <u>The ALJ Did Not Err in Discounting the Opinions of Drs. Wundes & Bottone.</u>

Plaintiff argues that the ALJ's reasons to discount the opinions of Drs. Wundes and Bottone are not specific and legitimate. The Court will address each disputed opinion in turn.

1. *Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

REPORT AND RECOMMENDATION - 9

disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2.  *Dr. Wundes*

Dr. Wundes treated Plaintiff's multiple sclerosis, and wrote a letter in April 2013 describing her limitations and indicating that during a multiple sclerosis exacerbation, Plaintiff would need to miss work three to five times per month. AR at 450-51. Dr. Wundes noted that she had not been treating Plaintiff long enough to know how often she experiences exacerbations, but Dr. Wundes believed that Plaintiff could work a flexible 20-hour/week job, but not full-time. AR at 451.

The ALJ discounted Dr. Wundes's conclusion regarding Plaintiff's ability to work 20 hours per week as a vocational opinion outside her area of expertise. AR at 26. The ALJ also found that the record did not show frequent (or even occasional) exacerbations of Plaintiff's multiple sclerosis that would prevent her from working full-time. *Id*.

Plaintiff argues that Dr. Wundes's opinion is "similar to those routinely provided by treating physicians." Dkt. 13 at 5. This assertion, without citation to authority, does not establish the truth of the assertion. Dr. Wundes's opinion regarding the level of absenteeism that would preclude work is indeed a vocational, rather than medical, opinion, and the ALJ did not err in discounting it as such. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one.").

Plaintiff goes on to argue that the ALJ erred in focusing on the medical record (or lack thereof) of her exacerbations, because Dr. Wundes opined that other limitations, as to walking, lifting, and fingering, existed even in the absence of an exacerbation. Dkt. 13 at 6 (referencing AR at 451). But the treatment record does not support those limitations, either: the record shows that Plaintiff had full motor strength in all extremities, with intact sensation. AR at 436

REPORT AND RECOMMENDATION - 11

(August 2012 note). At a subsequent appointment, in December 2012, the physician did not text Plaintiff's gait, motor strength, or sensation. AR at 425. Likewise, at a physical examination in May 2012, Plaintiff's motor strength, gait, and sensation were all normal.[2] AR at 399.

Plaintiff cites a March 2013 emergency room treatment note as evidence that her multiple sclerosis did in fact flare. Dkt. 13 at 7 (citing AR at 455, 460, 468). But the treatment notes cited indicate that "[t]here are no clear findings of true MS flare" that would warrant steroids, or an emergent MRI or hospital admission. AR at 455. The providers recommended that Plaintiff obtain an MRI on an outpatient basis, and they diagnosed "possible MS flare." AR at 455, 468. There are no subsequent treatment notes indicating that Plaintiff received an MRI, or what that testing revealed. This evidence does not indicate that the ALJ was unreasonable in finding a lack of evidence corroborating Dr. Wundes's opinion regarding multiple sclerosis flares and symptoms. *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

3.   *Dr. Bottone*

Dr. Bottone conducted a consultative psychiatric examination in June 2012. AR at 402-10. He opined that Plaintiff could perform simple, repetitive tasks; accept instruction from supervisors; interact with coworkers and the public; and perform work activities on a consistent basis without special or additional instruction. AR at 410. Dr. Bottone indicated, however, that Plaintiff's depression "has been overwhelming at times" and "has interfered with

---

[2] Plaintiff argues that the ALJ erred in relying on these findings, rather than Dr. Wundes's findings, because Dr. Wundes had the benefit of updated MRI reports. Dkt. 13 at 10. But the physical examination in May 2012 tested various aspects of Plaintiff's physical functioning that would not be tested in an MRI report, and therefore these findings are still relevant as to Plaintiff's actual functioning.

her work[,]" such that she could not maintain regular attendance in the workplace, or complete a normal workday without interruptions from a psychiatric condition. *Id.* Dr. Bottone also indicated that Plaintiff could not deal with the usual stress encountered in the workplace. *Id.*

The ALJ rejected the portions of Dr. Bottone's opinion wherein he opined that Plaintiff's limitations prevented her from working, finding those opinions to be "not consistent with [Plaintiff's] actual work activity or his clinical findings." AR at 25. The ALJ also found that it "appears that Dr. Bottone's opinions are based on the claimant's subjective reports, rather than her presentation during the clinical examination." *Id.*

The ALJ's findings are well-reflected in the text of Dr. Bottone's opinion: he cited only Plaintiff's self-reported problems at work as the basis for his conclusions regarding Plaintiff's ability to maintain attendance and complete a normal workday. AR at 410. Because the ALJ properly discounted Plaintiff's credibility, as discussed *supra*, the ALJ was entitled to discount Dr. Bottone's opinion to the extent that he relied on her subjective testimony rather than clinical findings. *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Furthermore, as found by the ALJ, Dr. Bottone's clinical findings do not support the limitations he indicated. The only specific limitations Dr. Bottone discussed in his conclusions related to memory (AR at 409-10), and yet Dr. Bottone opined that Plaintiff retained the capacity to perform simple, repetitive tasks, and to perform work activities on a consistent basis without special or additional instruction. AR at 410. The lack of clinical support for Dr. Bottone's opinions regarding disabling limitations constitutes a specific, legitimate reason to discount that portion of Dr. Bottone's opinion. *See Thomas*, 278 F.3d at 957.

C.     <u>The ALJ Did Not Err in Discounting the Lay Evidence.</u>

Plaintiff's work supervisor and sister-in-law, Constance Smith, wrote a letter describing Plaintiff's job performance to date. AR at 313. Ms. Smith described accommodations that

Plaintiff receives, as well as how Plaintiff's symptoms affect her ability to do her job. *Id*.

The ALJ noted that Ms. Smith did not disclose her familial relationship (see AR at 423) in her letter. AR at 26. The ALJ also found that Ms. Smith's description of Plaintiff's limitations and need for accommodation is not credible, in light of Plaintiff's continued employment. *Id*. Because Ms. Smith is a lay witness, the ALJ's reasons to discount her statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

Plaintiff argues that the ALJ's rationale "ignores real-life circumstances and relationships, in which family members help one another. Indeed, outside the realm of legal arguments, accommodations in a workplace are modestly placed on the spectrum of ways that people choose to help one another." Dkt. 17 at 6.

Family members can and do choose to help each other, but Plaintiff is employed by a corporate (not family-run) business. It is not unreasonable to find that an employee as limited as Ms. Smith described Plaintiff to be would not be able to maintain part-time employment, even with an accommodating supervisor. Accordingly, the ALJ's assessment of Smith's statement is germane and should be affirmed.

D.   The ALJ Did Not Err in Assessing Plaintiff's RFC.

Plaintiff challenges several aspects of the ALJ's RFC assessment. First, Plaintiff argues that the ALJ did not account for limitations indicated in the opinions of Drs. Wundes and Bottone. Dkt. 13 at 12. As explained, *supra*, the ALJ did not err in discounting these opinions and therefore did not err in failing to account for those opinions when assessing Plaintiff's RFC. *See Bayliss*, 427 F.3d at 1217-18.

Plaintiff also points to other medical evidence that she contends contradicts the ALJ's RFC assessment, all of which predates Plaintiff's alleged onset date of January 1, 2010. Dkt. 13 at 13-14 (citing evidence from 2008 and 2009). This evidence does not establish the

REPORT AND RECOMMENDATION - 14

existence of limitations during the relevant period that the ALJ erroneously overlooked. Accordingly, Plaintiff has not identified an error in the ALJ's RFC assessment.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 26, 2016**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 4, 2016**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 12th day of February, 2016.

/s/ James P. Donohue<br>
JAMES P. DONOHUE<br>
Chief United States Magistrate Judge